UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO


(FILED ELECTRONICALLY)


CIVIL ACTION NO. ___4:19cv-00138-JHM_____

UNITED STATES OF AMERICA                                          PLAINTIFF

vs.

CALBERT BROOKS, as heir of Calvin Green                          DEFENDANTS
206 N. Covington Avenue
Providence, KY 42450-1902

REVELLA BROOKS, as spouse of Calbert Brooks
206 N. Covington Avenue
Providence, KY 42450-1902

FRANCES BASS, as heir of Calvin Green
SERVE: Warning Order Attorney

ANY UNKNOWN HEIRS OR
SPOUSES OF HEIRS OF CALVIN GREEN
SERVE: Warning Order Attorney

ANY UNKNOWN SPOUSE OF CALVIN GREEN
SERVE: Warning Order Attorney

ANY UNKNOWN HEIRS OR SPOUSES OF HEIRS
OF ALVIN GREEN
SERVE: Warning Order Attorney

ANY UNKNOWN SPOUSE OF ALVIN GREEN
SERVE: Warning Order Attorney

ANY UNKNOWN OCCUPANT(S), TENANT(S) OR
LESSEE(S) OF 800 WESTERFIELD DRIVE,
PROVIDENCE, KENTUCKY
SERVE: Warning Order Attorney

TROVER CLINIC FOUNDATION, INC.
SERVE: Logan, Morton & Ratliff
Counsel for Judgment Creditor
P.O. Box 429
Madisonville, KY 42431

## COMPLAINT FOR FORECLOSURE

Plaintiff, the United States of America, states as follows:

1.      This is a mortgage foreclosure action brought by the United States of America on behalf of its agency, the United States Department of Agriculture Rural Housing Service also known as Rural Development (hereinafter collectively "RHS").

2.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial division, where the subject property is located.

3.      RHS is the holder of a promissory note executed for value on January 30, 2007 by Alvin Green also known as Alvin Denton Green ("Alvin Green"), now deceased and not a defendant herein.  The principal amount of the Note was $67,900.00, bearing interest at the rate of 5.75 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

4.      The Note is secured by a Real Estate Mortgage recorded on January 31, 2007 in Mortgage Book 262, Page 727, in the Office of the Clerk of Webster County, Kentucky. Through the Mortgage, Alvin Green, unmarried, granted RHS a first mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 800 Westerfield Drive, Providence, Webster County, Kentucky  (the "Property")  and described in more detail in the Mortgage.  A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

5.      To receive subsidies on the loan, Alvin Green signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to him by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

6.      RHS is the holder of a Second Promissory Note executed for value on August 10, 2007 by Alvin Green.  The principal amount of the Second Note was $19,600.00, bearing interest at the rate of 5.75 percent per annum, and payable in monthly installments as specified in the Second Note.  A copy of the Second Note is attached as **Exhibit D** and incorporated by reference as if set forth fully herein.

7.      The Second Note is secured by a Second Mortgage recorded on August 13, 2007 in Mortgage Book 269, Page 249, in the Office of the Clerk of Webster County, Kentucky.  Through the Mortgage, Alvin Green, unmarried, granted RHS a mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 800 Westerfield Drive, Providence, Webster County, Kentucky (the "Property") and described in more detail in the Mortgage.  A copy of the Mortgage is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.

8.      Title to the Property vested in Alvin Green as follows:

(a)      Alvin Green obtained a one-fourth interest in the Property through a Master Commissioner's Deed dated August 21, 1979, and recorded in Deed Book 178, Page 431 in the Office of the Clerk of Webster County Kentucky.  *See* **Exhibit F**.

(b)      Alvin Green obtained an additional interest when his grandmother (Robina Phillips) died on May 3, 1992.  Robina Phillips' Will was probated and recorded in Will Book 15, Page 509, in the Office of the Clerk of Webster County, Kentucky.  **Exhibit G.**  The Will directed that Robina Phillips' one-fourth interest in the Property be divided equally between

3

Alvin Green, Mary E. Green (the mother of Alvin Green), and Calvin Green (Alvin Green's brother).

(c)      Alvin Green obtained an additional interest in the Property when his mother (Mary E. Green) died intestate on April 9, 2006.  *See* **Exhibit H**: Affdavit of Descent for Mary E. Green recorded in Deed Book 263, Page 396 on January 31, 2007, in the Office of the Clerk of Webster County, Kentucky.  Mary E. Green's interest in the Property was divided equally between her two heirs-at-law—her sons, Alvin Green and Calvin Green.  *Id*.

(d)      On October 24, 2006, Alvin Green signed an "Affidavit of Descent for Robina Phillips" stating that Robina Phillips "died intestate" and "her only heir-at-law" was her daughter Mary E. Green.  *See* **Exhibit I**.  The Affidavit of Descent for Robina Phillips was recorded in Deed Book 263, Page 397 on January 31, 2007, in the Office of the Clerk of Webster County, Kentucky.  Upon information and belief, this Affidavit of Descent was filed in error.  In any event, through the various transactions described herein, full title and interest in the Property ultimately vested in Alvin Green by the date he granted a Mortgage interest to RHS.

(e)      By deed dated November 28, 2006, Calvin Green and his wife Carolyn Jena Green deeded their title and interest in the Property to Alvin Green.  This deed was recorded at Deed Book 263, Page 398 on January 31, 2007, in the Office of the Clerk of Webster County, Kentucky.  **Exhibit J**.

9.      Alvin Green died intestate on November 8, 2009.  **Exhibit K**: Affidavit of Descent, dated June 7, 2010 and recorded on July 21, 2010 in Deed Book 275, Page 591, in the Office of the Clerk of Webster County, Kentucky.

10.      Upon Alvin Green's death intestate, his title and interest in the Property vested in his sole heir, his brother, Calvin Green.  *Id*.

4

11.     On July 27, 2010, Calvin Green, also known as Calvin D. Green and Calvin Denton Green ("Calvin Green"), now deceased and not a defendant herein, signed and delivered to RHS an Assumption Agreement, a copy of which is attached as **Exhibit L** incorporated by reference as if set forth fully herein.  In and by the Assumption Agreement, Calvin Green became liable to RHS under (a) the Note and Mortgage with a principal amount of $67,900.00 at an interest rate of 5.75 percent, and (b) the Second Note and Second Mortgage with a principal amount of $19,600.00 at an interest rate of 5.75 percent, collectively with terms as specified in the Assumption Agreement.

12.     To receive subsidies on the loan, Calvin Green signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to him by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit M** and incorporated by reference as if set forth fully herein.

13.     On or about September 21, 2012, Calvin Green, for value, executed and delivered to RHS a Reamortization Agreement which changed the terms of the original Note.  **Exhibit N**. Specifically, the unpaid principal and the unpaid interest were combined for a new principal amount of $78,198.68, and the amount of the monthly installment payment was increased to $444.23.

14.     On or about September 21, 2012, Calvin Green, for value, executed and delivered to RHS a Reamortization Agreement which changed the terms of the Second Note.  **Exhibit O**. Specifically, the unpaid principal and the unpaid interest were combined for a new principal amount of $21,783.63, and the amount of the monthly installment payment was increased to $123.00.

15.     The Notes, Mortgages, Assumption Agreement and Reamortization Agreeements mentioned herein are in default as a result of nonpayment and abandoning the Property.

5

16.     Upon information and belief, Calvin Green died intestate on January 22, 2018.

**Exhibit P**: Obituary.  Calvin Green was predeceased by his wife Carolyn Green, who died on February 15, 2010, prior to the date Calvin Green signed an assumption agreement with RHS.

17.     RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, RHS sent notice of the default and acceleration of the loan.

18.     In accordance with the loan documents, the United States is entitled to enforce the Mortgages through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

19.     The unpaid principal balance on the Note and Second Note is $93,047.79 with accrued interest of $9,583.34 through August 20, 2019 with a total subsidy granted of $20,318.15, late charges in the amount of $75.70, and fees assessed of $3,609.88, for a total unpaid balance of $126,634.76 as of August 20, 2019.  Interest is accruing on the unpaid principal balance at the rate of $15.2026 per day after August 20, 2019.

20.     The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's liens thereon.

21.     Upon information and belief, Calvin Green had no children or other descendants. Similarly, Calvin Green had no surviving spouse; nor did he have any surviving grandparents. Thus, under KRS § 391.010(5)(b), his next living heir(s) would be uncles and aunts and their descendants, if any.

22.     The United States names **Calbert Brooks**, an uncle and heir of Calvin Green, as a Defendant to allow this Defendant to assert whatever right, title or claim they may have in or to

the Property or to the proceeds from the sale thereof, or be forever barred.  This Defendant's interest, if any, is inferior to the rights of the United States.

23.     The United States names **Revella Brooks**, spouse of Calbert Brooks, as a Defendant to allow this Defendant to assert whatever right, title or claim they may have in or to the Property or to the proceeds from the sale thereof, or be forever barred.  This Defendant's interest, if any, is inferior to the rights of the United States.

24.     The United States names **Frances Bass**, an aunt and heir of Calvin Green, as a Defendant to allow this Defendant to assert whatever right, title or claim they may have in or to the Property or to the proceeds from the sale thereof, or be forever barred.  This Defendant's interest, if any, is inferior to the rights of the United States.

25.     The United States names **Any Unknown Heirs and Unknown Spouses of Heirs of Calvin Green** as a Defendant to allow this Defendant to assert whatever right, title or claim they may have in or to the Property or to the proceeds from the sale thereof, or be forever barred. This Defendant's interest, if any, is inferior to the rights of the United States.

26.     Defendant **Any Unknown Spouse of Calvin Green** may claim an interest in the Property, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the Plaintiff.  Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

27.     Defendant **Any Unknown Heirs and Spouses of Heirs of Alvin Green** may claim an interest in the Property, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the Plaintiff.  Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

28.     Defendant **Any Unknown Spouse of Alvin Green** may claim an interest in the Property, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the Plaintiff.  Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

29.     Defendant **Any Unknown Occupant(s), Tenant(s) or Lessee(s) of 800 Westerfield Drive, Providence, Kentucky** may claim an interest in the Property, which interest is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of the Plaintiff.  Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

30.     Defendant **Trover Clinic Foundation, Inc.** may claim an interest in the Property by virtue of a Notice of Judgment Lien recorded on September 27, 2010 in Encumbrance Book 25, Page 797 in the Webster County Clerk's Office, a copy of which is attached as **Exhibit Q**. The interest of this Defendant is inferior in rank and subordinate in priority to the prior mortgage liens on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert their interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

31.     There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.     In rem judgment in favor of the United States and against the defendants in the Property in the principal amount of $93,047.79 with accrued interest of $9,583.34 through August 20, 2019 with a total subsidy granted of $20,318.15, late charges in the amount of $75.70, and fees assessed of $3,609.88, for a total unpaid balance of $126,634.76 as of August 20, 2019, with interest accruing at the daily rate of $15.2026 from August 20, 2019, until the date

of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

       b.     That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

       c.     That the United States' lien be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

       d.     That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

       e.     That the Property be adjudged indivisible and be sold as a whole; and

       f.     That the United States receive any and all other lawful relief to which it may be entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney

s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:  502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

≋JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

05/08/2008  09:34  2709267808                NRCS/USDA                                    PAGE  02/13

*Original*

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

## UNITED STATES DEPARTMENT OF AGRICULTURE
### RURAL HOUSING SERVICE

## PROMISSORY NOTE

Type of Loan  SECTION 502

Loan No. ▮▮▮▮▮▮▮▮▮▮

Date:  01/30  20 07

**SATISFIED**

This _____ day of _____ ,20____
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

800 Westerfield Drive
_____ (Property Address)
Providence                    Webster                KY
(City or Town)                (County)               (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 67,900.00 (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of ____5.7500____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to ~~January 30~~  2008 April 8 shall be added to the principal. The new principal and later accrued interest shall be payable in ~~442~~ 444 regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ 68,589.90_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _____ installments as indicated in the box below.  A G    A G    A G

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the ~~18th~~ day of each month beginning on  May 8 ~~February~~  2008 and continuing for  441 444 months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on  January 30  2045 , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 374.11 _____. I will make my monthly payment at the post office address noted on my billing statement _____ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

Exhibit A

Account 

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

05/08/2008  09:34   2709267808                    NRCS/USDA                          PAGE  04/13

Account #

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch, Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_Alvin Green_ Seal    _____ Seal
Borrower Alvin Green          Borrower

_____ Seal    _____ Seal
Borrower          Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 6,965.00 | 1/31/07 | (8) $ | | (15) $ | |
| (2) $ 18,000 | 3/3/07 | (9) $ | | (16) $ | |
| (3) $ 36,000 | 4/1/07 | (10) $ | | (17) $ | |
| (4) $ 6,500 | 6/20/07 | (11) $ | | (18) $ | |
| (5) $ 435 | 2/29/08 | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

3

MTG BK 262 PG 727

Form RD 3550-14 KY
(Rev. 12-05)

[Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on **January 30, 2007**          [Date]
The mortgagor is **ALVIN GREEN, single**
                                                                      ("Borrower").
This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United
States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States
Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note")
which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and
payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| January 30, 2007 | $ 67,900.00 | January 30, 2045 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the
property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument
and the Note; and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to
42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described
property located in the County of           Webster          , State of Kentucky

which has the address of      800 Westerfield Drive                          Providence
                                                [Street]                        [City]
Kentucky     42450     [ZIP]      ("Property Address");



*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a
valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete
this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching
existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

Page 1 of 6

Exhibit B

MTG BK 262 PG 728

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice

Page 2 of 6

MTG BK 262 PG 729

Identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release of subordination of this instrument or any other transaction affecting the property.

5.  **Hazard or Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurer  providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgage clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.  The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.  If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall maintain the improvements in good repair and make repairs required by Lender.  Borrower shall comply with all laws, ordinances, and regulations affecting the Property.  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.  Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.  **Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  **Refinancing.**  If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9.  **Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and

Page 3 of 6

MTG BK 262   PG 730

shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. **Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. **Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

18. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice

Page 4 of 6

will state the name and address of the new Loan Servicer and the address to which payments should be made.

19.  Uniform Federal Non-Judicial Foreclosure.  If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20.  Hazardous Substances.  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property.  The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21.  Cross Collateralization.  Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

22.  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23.  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24.  Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25.  Release.  Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

26.  Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box]

☐  Condominium Rider          ☐  Planned Unit Development Rider          ☐ Other(s) [specify]

MTG BK 262  PG 731

MTG BK 262  PG 732

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_Alvin Green_ _____ [SEAL]
ALVIN GREEN          _Borrower_

_____ [SEAL]
                         _Borrower_

STATE OF KENTUCKY          }
                           } ss :
COUNTY OF __HOPKINS__       }          ACKNOWLEDGMENT

Before me, __April L. Terry_____, a Notary Public in and for the County of
_____, personally appeared __Alvin Green, a single person__
_____ who acknowledged that __he__ ____ executed the foregoing
instrument on the __30th__ day of __January__ , __2007__ as __his__ free act and deed.

    WITNESS my hand and official seal this __30th__ ' day of __January__ __2007__ .

[SEAL]                                   _April L. Terry_ Notary Public
                    9-8-10                     My commission expires

_____

**PREPARER'S STATEMENT**
The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

__J. Keith Cartwright_____          _J. Keith Cartwright_
        _(Name)_                                  _(Signature)_
__Post Office Box 695, Madisonville, Kentucky, 42431__
        _(Address)_

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY          }
                           } ss :
COUNTY OF _____  }

I, _____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _____ day of _____, _____,
lodged for record _____ at _____ o'clock ___M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

    Given under my hand this _____ day of _____, _____.

                            _____
                            Clerk of          County Court
                            By _____, D.C.

Page 6 of 6

MTG BK 262 PG 733

**EXHIBIT A - LEGAL DESCRIPTION**

A certain lot located in Providence, at the intersection of Westerfield Drive and South Foxwell Avenue, said lot being the Alvin and Calvin Green lot (DB 178, P 431), and described by metes and bounds as follows:

Beginning at an iron pin set on the southeast side of Westerfield Drive, 22 feet from the center, at the back of the existing sidewalk, and the northeast side of South Foxwell Avenue, said point being the point of beginning; thence with the southeast side of Westerfield Drive and the back of said sidewalk North 26° 10' 33" East, a distance of 66.28 feet to an iron pin set on the southeast side of Westerfield Drive at the back of said sidewalk, a corner to Sarah Thomas Est. (DB 105, P 259); thence with Thomas South 48° 30' 00" East, a distance of 125.23 feet to an iron pin set in the line of Noralee and Arthur Walters (no record found); thence with Walters South 36° 30' 00" West, a distance of 74.48 feet to an iron pin set on the northeast side of South Foxwell Avenue; thence with the northeast side of South Foxwell Avenue North 43° 21' 32" West, a distance of 114.66 feet to the point of beginning; said described tract containing 8,205.62 square feet, more or less, pursuant to a survey by Keith Whitledge, PLS #3399, on September 13, 2006.

Being the same property conveyed by Calvin Green and his wife, Carolyn Jena Green, to Alvin Green by deed dated November 28, 2006 of record in Deed Book _265_, page _998_ of the Webster County Court Clerk's Office.

STATE OF KENTUCKY >SO
COUNTY OF WEBSTER
This instrument was filed for record on the
_31st_ day of _June_ 2007
at _10:13_ A m, and is duly recorded in
_Mtg_ book _262_
page _727_
VALERIE FRANKLIN, CLERK
_Denise Brown_ D.C.

05/08/2008   09:34     2709267808                    NRCS/USDA                              PAGE  05/13

Form RD 3550-12                    **United States Department of Agriculture**                    Form Approved
(Rev. 9-06)                              **Rural Housing Service**                          OMB No. 0575-0172

                                    03

                                                                                    Account # 

## SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property. The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but; payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3. Calculating Original Equity.

For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately furnished under the Self-Help program, an amended agreement using the market value definition for all other transactions as outlined below must be completed.

For all other transactions, the market value is the lower of the:

    Sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable
    OR
    Appraised value as determined at the time of loan approval/obligation.

If the applicant owns the building site free and clear or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value will be the lower of the appraised value or the construction cost plus the value of the site.

Market value of property located at:

**800 Westerfield Drive**

**Providence, KY   42450**                         $ 87,500.00

Less Prior Liens                        $ _____    Held by _____
                                        $ _____    Held by _____
Less Subordinate Affordable Housing Products   $ _____  Held by _____
                                        $ _____    Held by _____

Less Rural Development Single Family Housing Loans   $ 88,300.00
Equals Original Equity (If negative number use "0")   $ 0.00

Percent of Original Equity                  $ 0.00        %
(Determined by dividing original equity by the market value)

4. If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, the amount to be recaptured is computed according to the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Exhibit C

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6. Calculating Recapture

Current Market value

LESS

Original amount of prior liens and subordinate affordable housing products,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements (see 7 CFR part 3550).

EQUALS

Appreciation value. (If this is a positive value, continue.)

TIMES

Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).

EQUALS

Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower _Alen Green_ | Date 04-08-2008 |
|---|---|
| Borrower | Date 04-08-2008 |

05/01/2008  09:40    2789267888              NRCS/USDA                        PAGE  18/21

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

## UNITED STATES DEPARTMENT OF AGRICULTURE
## RURAL HOUSING SERVICE

### PROMISSORY NOTE

Type of Loan  SECTION 502

Loan No. ▮▮▮▮▮▮▮▮  01

Date:  08/10  20 07

**SATISFIED**

This _____ day of _____, 20___.
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

800 Westerfield Drive
_____
                            (Property Address)
Providence                     , Webster        , KY
(City or Town)          (County)          (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 19,600.00 (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of ___5.7500___ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

A G    A G

I. Principal and interest payments shall be temporarily deferred. The interest accrued to ~~August 10~~ April 9 , 2008 shall be added to the principal. The new principal and later accrued interest shall be payable in ~~441~~ 442 regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ 19,710.23 , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _____ installments as indicated in the box below.  A G        A G        A G

I will pay principal and interest by making a payment every month.
I will make my payment on the __9th__ day of each month beginning on ~~September 10~~ May 9 , 2008 and continuing for __442__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __August 10__, __2045__, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 107.02 , I will make my monthly payment at the post office address noted on my billing statement or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

Exhibit D

Account # 

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

05/01/2008   09:40   2709267808                    NRCS/USDA                              PAGE   20/21

Account #  ███████

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch, Post Office Box 66889, St. Louis, MO 63166              , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_Alvin Green_ _____ Seal          _____ Seal
Borrower Alvin Green                                        Borrower

_____ Seal          _____ Seal
Borrower                                        Borrower

| RECORD OF ADVANCES |||||||
|---|---|---|---|---|---|---|
| **AMOUNT** | **DATE** | **AMOUNT** | **DATE** | **AMOUNT** | **DATE** |
| (1) $ 70,000 | 8/08/07 | (8) $ | | (15) $ | |
| (2) $ 7,800 | 9/05/07 | (9) $ | | (16) $ | |
| (3) $ 3,500 | 10/27/07 | (10) $ | | (17) $ | |
| (4) $ 700 | 3/09/08 | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

3

05/01/2008  09:40  2709267888          NRCS/USDA                    PAGE  21/21

vTG BK 269 PG 255

# EXHIBIT "A"

A certain lot located in Providence, at the intersection of Westerfield Drive and South Foxwell Avenue, said lot being the Alvin and Calvin Green lot (DB 178, P 431), and described by metes and bounds as follows:

Beginning at an iron pin set on the southeast side of Westerfield Drive, 22 feet from the center, at the back of the existing sidewalk, and the northeast side of South Foxwell Avenue, said point being the point of beginning; thence with the southeast side of Westerfield Drive and the back of said sidewalk North 26 deg 10' 33" East, a distance of 66.28 feet to an iron pin set on the southeast side of Westerfield Drive at the back of said sidewalk, a corner to Thomas East. (DB 105, P 256); thence with Thomas South 48 deg 30' 00" East, a distance of 125.23 feet to an iron pin set in the line of Noralee and Arthur Walters (no record found); thence with Walters South 36 deg 30' 00" West, a distance of 74.48 feet to an iron pin set on the northeast side of South Foxwell Avenue; thence with the Northeast side of South Foxwell Avenue North 43 deg 21' 32" West, a distance of 114.66 feet to the point of beginning; said described tract containing 8,205.62 square feet, more or less, pursuant to a survey by Keith Whiteledge, PLS #3399, on September 13, 2006; and

Being the same property conveyed to Robina Phillips, Mary E. Green, Alvin Green, and Calvin Green, by Deed dated August 21, 1979 and filed in Book 178, Page 431; and

Thereafter Robina Phillips departed this life intestate and pursuant to Affidavit of Descent (Book 263, Page 397) all of her right, title and interest was conveyed to Mary E. Green; and

Thereafter Mary E. Green departed this life and pursuant to Affidavit of Descent (Book 263, Page 397) all of her right, title and interest was conveyed to Alvin Green and Calvin Green; and

Thereafter being the same property conveyed to Alvin Green, by Deed dated November 28, 2006 and recorded January 31, 2007 in Book 263, Page 398 in Webster County Kentucky.

A 9



MTG BK 269 PG 249

FIRST AMERICAN TITLE
530 FREDERICA STREET
OWENSBORO, KENTUCKY 42301

Form RD 3550-14 KY
(Rev. 12-05)

[Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

## MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on  August 10, 2007         [Date]

The mortgagor is    Alvin Green, Single                                   ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| August 10, 2007 | $19,600.00 | August 10,2045 |
| January 30, 2007 | $67,900.00 | January 30,2045 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of    Webster

                                        , State of Kentucky

SEE ATTACHED EXHIBIT "A"

which has the address of  800 Westerfield Drive,  Providence, KY 42450
                                    [Street]                           [City]

Kentucky     [ZIP]                                     ("Property Address");

A 9

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Page 1 of 6

Exhibit E

VTG BK 269 PG 250

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraph 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.
4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice

A9

Page 2 of 6

identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5.  Hazard or Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.  The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.  If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall maintain the improvements in good repair and make repairs required by Lender.  Borrower shall comply with all laws, ordinances, and regulations affecting the Property.  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.  Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.  Protection of Lender's Rights in the Property.  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  Refinancing.  If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9.  Inspection.  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and

*A 9*

Page 3 of 6

VTG BK 2469 PG 252

shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15. Borrower's Copy. Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

17. Nondiscrimination. If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

18. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice

Page 4 of 6

A 9

will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25. **Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other(s) [specify]

A 9

VTG BK 269 PG 254

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument.

_Alvin Green_ _____ [SEAL]
Alvin Green          Borrower

_____ [SEAL]
                    Borrower

STATE OF KENTUCKY
COUNTY OF _Webster_          ss:          ACKNOWLEDGMENT

Before me, __Darlene Prather__, a Notary Public in and for the County of _Henderson_, personally appeared __Alvin Green, single__ who acknowledged that __he__ executed the foregoing instrument on the __10__ day of __August__, __2007__ as __his__ free act and deed.

WITNESS my hand and official seal this __10__ day of __August__, __2007__.

[SEAL]          DARLENE PRATHER
Notary Public - State at Large, Kentucky
Commission Expires January 6, 2011

_Darlene Prather_ Notary Public
My commission expires

**PREPARER'S STATEMENT**
The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

Prepared By:
First American Title Insurance Company

_____
(Name)

_____
(Address)

Shawn E. Frailert
530 Frederica Street
Owensboro, KY 42301
270.926.1453

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY
COUNTY OF _____          ss:

I, _____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _____ day of _____, _____, lodged for record _____ at _____ o'clock __M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _____ day of _____, _____.

_____
Clerk of          County Court
By _____, D.C.

Page 6 of 6

VTG BK 269 PG 255

## EXHIBIT "A"

A certain lot located in Providence, at the intersection of Westerfield Drive and South Foxwell Avenue, said lot being the Alvin and Calvin Green lot (DB 178, P 431), and described by metes and bounds as follows:

Beginning at an iron pin set on the southeast side of Westerfield Drive, 22 feet from the center, at the back of the existing sidewalk, and the northeast side of South Foxwell Avenue, said point being the point of beginning; thence with the southeast side of Westerfield Drive and the back of said sidewalk North 26 deg 10' 33" East, a distance of 66.28 feet to an iron pin set on the southeast side of Westerfield Drive at the back of said sidewalk, a corner to Sarah Thomas Est. (DB 105, P 296); thence with Thomas South 48 deg 30' 00" East, a distance of 125.23 feet to an iron pin set in the line of Noralee and Arthur Walters (no record found); thence with Walters South 36 deg 30' 00" West, a distance of 74.48 feet to an iron pin set on the northeast side of South Foxwell Avenue; thence with the Northeast side of South Foxwell Avenue North 43 deg 21' 32" West, a distance of 114.66 feet to the point of beginning; said described tract containing 8,205.62 square feet, more or less, pursuant to a survey by Keith Whiteledge, PLS #3399, on September 13, 2006; and

Being the same property conveyed to Robina Phillips, Mary E. Green, Alvin Green, and Calvin Green, by Deed dated August 21, 1979 and filed in Book 178, Page 431; and

Thereafter Robina Phillips departed this life intestate and pursuant to Affidavit of Descent (Book 263, Page 397) all of her right, title and interest was conveyed to Mary E. Green; and

Thereafter Mary E. Green departed this life and pursuant to Affidavit of Descent (Book 263, Page 397) all of her right, title and interest was conveyed to Alvin Green and Calvin Green; and

Thereafter being the same property conveyed to Alvin Green, by Deed dated November 28, 2005 and recorded January 31, 2007 in Book 263, Page 398 in Webster County Kentucky.

A 9

1.00 St.
1.00 Clk.
6.00
V.T.11.00

8-29-79         Returned to      Robina Phillips
                                 817 Westerfield Drive
                                 Providence, Ky. 42450

00431

COMMISSIONER'S DEED WITH LIEN

WHEREAS in the action of _____

ARTIE LEE WINSTEAD
        against                                                    Plaintiff

REGINA CLAIBORNE, ET AL
                                                                   Defendant

pending in the _____ Webster _____ Circuit Court, an order was entered at the
_____ June 18 _____ Term, 19 79 , directing _____ Elmon Whitledge _____ Master Com-
missioner of said Court, to expose for sale at public auction, to the highest and best bidder, the property
hereinafter described; and WHEREAS, said property was sold in accordance with said order, on the
_____ 10th _____ day of _____ August _____ 1979 ___ for the sum of _____
Eleven thousand one hundred --------------------------------------------Dollars
and _____ no _____ cents, when _____ Robina Phillips, et al _____ became the purchaser
thereof; and WHEREAS, the report of said sale was confirmed by said Court on the _____ 21st _____
day of _____ August _____, 19 79 , and an order was entered directing Elmon Whitledge, Master Com-
missioner to execute a Deed of Conveyance of said property to said _____ Robina Phillips, Mary E.
Green, Alvin Green, and Calvin Green, _____
but for greater certainty, the record and proceedings in said case are referred to.

        Now, therefore, this indenture, made and entered into this  21st  day of  August  19 79
by and between Elmon Whitledge, Master Commissioner of said court, who conveys for and on behalf of
  Regina Claiborne, Artie Lee Winstead, Richard F. Morrow, Corinna Moody,
  Eulus Morrow, Samey Morrow, Willie Cox, Cora Mae Gibson, Robert D. Gibson,
  Gwendolyn Gibson, Valerie Jean Gibson, Wanda R. Arnold, Leatta Rice,
  Leander Gibson, Calvin Gibson, Carolyn Gibson, Growe Gibson, Michelle
  C. Gibson, Ledeal Gibson, Claudia Boles, Mattie Cox, Minnie Woolfolk,
  Evelyn Weir and Frank Hampton.

_____
_____
of the first part, and Robina Phillips, Mary E. Green, Alvin Green & Calvin Green,
of the second part, WITNESSETH, that for and in consideration of the premises, and by virtue of the
power by law vested in him, the party of the first part, Elmon Whitledge as Master Commissioner aforesaid, has
sold and by this writing does convey to said part ___ ies ___ of the second part and _____ their
heirs and assigns forever, the following described property, to-wit:_____
_____
_____

TAX IN THE AMOUNT OF $ 11.00
PAID _____ 8-27-79

Jo Ann Blackwell(?)

Exhibit F

00432

One house and lot in Providence, Kentucky, and known as the Perry Sugg house and lot and which is located on the south of Dixon Street, and the east side of Foxwell Avenue, and also lying on the west side of Lavan Harrelson. Less, however, the coal and mineral rights.

Being the same property conveyed to Sam Massey and wife, Jessie Massey, as joint tenants with right of survivorship by deed dated September 23, 1947, and recorded in Deed Book 103, page 117, and being the same property acquired by Katie Pearl Jones upon the death of Sam Massey and Jessie Massey, as shown by Affidavit of Descent dated _____ and recorded in Deed Book 179 , page #42 , in the office of the County Court Clerk of Webster County, Kentucky.

To have and to hold said property with its appurtenances, unto the said grantee, he irheirs and assigns. And the said Commissioner conveys all the right, title and interest, legal and equitable of the said Regina Claiborne, et al

with such covenant of warranty as he is authorized by the judgment, orders, and proceedings in said cause to make, and no further; but he does not bind himself personally by anything contained herein in any event whatever. A lien is hereby retained to secure the unpaid purchase money.

IN TESTIMONY WHEREOF, said Elmon Whitledge as Master Commissioner aforesaid, has hereunto subscribed his name, this 21st day of August 19 79.

*Elmon Whitledge* Master Commissioner.

Acknowledged by the Commissioner, examined, found correct and approved in open Court, and ordered to be certified for record, this 21st day of August 19 79.

*Bill Don Miller* Judge, W. C. C.

00433

STATE OF KENTUCKY,

__Webster__ } Sct.
_____ Circuit Court

I, ____Patsy Chandler____ Clerk of ____Webster____ Circuit Court,

do hereby certify that this Deed, from

____Regina Caliborne, et al____

by ____Elmon Whitledge,____ Master Commissioner of said Court, to

____Robins Phillips, et al____

was, on the __21__ day of __August__ 19 __79__, presented in open Court by

____said____ Commissioner, and was by him duly acknowledged to

be his act and deed. And the said Deed having been examined by the Court, was approved and con-

firmed and so indorsed by the Judge, and ordered to be transmitted, duly certified, to the Clerk of the

____Webster____ County Court for record, which is now done accordingly.

Given under my hand, this __21__ day of __August__ 19 __79__

Attest:

_Patsy H. Chandler_ Clerk

By _Janet Watson_ D.C.

_____

STATE OF KENTUCKY,

County of _Webster_ } Sct.

I, _JoNell Blackburn_ Clerk of the _Webster_ County

Court, do hereby certify that the foregoing Deed, from

_Regina Caliborne, etal_ by _Elmon Whitledge, Master_

Commissioner of the _Webster_ Circuit Court, to

_Robins Phillips, etal_

_____ was produced to me in my office on

the __27__ day of _August_, 19 __79__, certified as above for record.

Whereupon the same, and the foregoing, and this certificate have been duly recorded in my office.

Given under my hand, this __27__ day of _August_ 19 __79__

Attest:

_JoNell Blackburn_ Clerk

By _Sandra Norris_ D.C.

STATE OF KENTUCKY )   This instrument was filed for record on the __27__ day of _August_,

) SCT 19 __79__ at _2:55PM_., and is duly recorded in _Deed_ Book _178_ Page _431_.

COUNTY OF WEBSTER )   JO NELL BLACKBURN, Clerk   BY: _Sandra Norris_ D.C.

IN RE:  ESTATE OF ROBINA PHILLIPS
92-P-071

Filed in open court this _____ 12 day of _____ May _____ 19 72

Will tendered in open Court this _____ 12 day of _____ May _____ 19 72

Upon hearing the will offered was proven by _____ William E. Mitchell _____
and ordered probated as the last will and testament of decedent this _____ 13 day of _____ May _____ 19 72

and the Court appoints _____ Mary Grass _____  Executor-Administrator of said estate

and fixes bond in the sum of _____ # 20,000 w/adequate surety _____  _____ Judge

| COMMONWEALTH OF KENTUCKY | WAIVER OF NOTICE AND REQUEST |
| COUNTY OF_____ | FOR APPOINTMENT OF FIDUCIARY |

We, the undersigned, surviving spouse and next of kin _____

_____ DECEASED, resident of _____ Kentucky,

hereby waive notice of the presentation of said decedent's will for probate and/or appointment of fiduciary, and

request the court to appoint, _____ as Execut _____ or Administrat _____

COMMONWEALTH OF KENTUCKY

COUNTY OF Webster   AFFIDAVIT OF SURETY

Affiant, _____ Nettie Mae Woolfolk _____ states that affiant is a resident of the Commonwealth of
Kentucky, and that affiant has fee simple to and beyond amount of liens or encumbrances and homestead exemptions
and subject to execution, real estate of value of $ 20,000 located at Rt 1, Box 277 Cumberland Presp. Ins.,
_____ in affiant's own name. Value of Property $ 20,000 Encumbrances $ _____ Homestead _____

x _____ Nettie Mae Woolfolk _____
                                        Surety
Providence Ky _____
                                        Affiant

Subscribed and sworn to before me by above named affiant this _____ 19___

                                        _____ Clerk

## ENTERED

By _____ D.C.

MAY 1 2 1992
CONNIE TOWNSEND, CLERK
WEBSTER DISTRICT COURT

AOC 81-805 Page 2    By _____ D.C.

A TRUE COPY
ATTEST: CONNIE TOWNSEND, CLERK, D.C.
_____

000509

STATE OF KENTUCKY )   This instrument was filed for record on the 15th day of May
                  ) SCT 19 92, at _____ M., and is duly recorded in Will Book 15 Page 509
COUNTY OF WEBSTER )   JO NELL BLACKBURN, Clerk    By: _____ D.C.

Exhibit G

000510

### W I L L

I, **Robina Phillips**, of 800 Westerfield Drive, Providence, Webster County, Kentucky, do make, declare, and publish the following as my Last Will and Testament, hereby revoking all former Wills and Codicils made by me.

#### ITEM I

I direct that my just debts and funeral expenses be paid as soon as is practicable after my death.

#### ITEM II

I nominate and appoint my daughter, Mary Green, as Executrix of this, my Will, and direct that she be required to post bond with adequate surety.

#### ITEM III

I devise and bequeath all of the rest and residue of my property, both real and personal, wheresoever situated, after the payment of all outstanding indebtedness and cost of burial to Mary Green, Calvin Green and Alvin Green, in equal shares.

Witness my hand in duplicate this the _9th_ day of August, 1990.

We, William E. Mitchell and Joan E. Bosaw, at the request of Robina Phillips did witness her signature to the foregoing Will, and do certify that she did sign same in our presence and that we did sign same in her presence and in the presence of each other.

Witness our hands in duplicate this the _9th_ day of August, 1990.

_William E. Mitchell_

_Joan E. Bosaw_

PREPARED BY:

_William E. Mitchell_
WILLIAM E. MITCHELL, ATTORNEY
203 SOUTH MAIN STREET
DIXON, KENTUCKY 42409

STATE OF KENTUCKY)
                 ) SCT
COUNTY OF WEBSTER)

I, JO NELL BLACKBURN, CLERK of Webster County, certify that the foregoing Will was by order of the Webster County District Court at its regular term, the _15th_ day of _May_, 199_2_, was admitted to probate and ordered to be recorded in WILL BOOK _15_, PAGE _510_.

JO NELL BLACKBURN, CLERK

BY _Clarice Brown_ D.C.

000511

DEED BK 263 PG 396

## AFFIDAVIT OF DESCENT FOR MARY E. GREEN

Comes the Affiant, Alvin Green, who after being first duly sworn, does state as follows:

The Affiant states that he is the son of Mary E. Green who died intestate on April 9, 2006 a resident of Colonial Terrace Nursing Home, Sebree, Webster County, Kentucky. At the time of her death, Mary E. Green was survived by the following persons who are her only heirs-at-law and who inherited any interest she had in any real estate in the Commonwealth of Kentucky:

| Name | Relationship | Interest Inherited |
|---|---|---|
| Alvin Green<br>800 Westerfield Drive<br>Providence, Kentucky, 42450 | Son | 1/2 |
| Calvin Green<br>800 Westerfield Green<br>Providence, Kentucky, 42450 | Son | 1/2 |

So stated by the Affiant this 24th day of October, 2006.

_Alvin Green_
ALVIN GREEN

STATE OF KENTUCKY )
              ) SCT.
COUNTY OF WEBSTER )

The foregoing Affidavit of Descent for Mary E. Green was acknowledged, sworn to, and subscribed before me by Alvin Green, a person known to me or presenting sufficient evidence of his identification, on this 24 day of October, 2006.

_S. ..._
Notary Public
My commission expires: August 9, 2007

Prepared by:  J. Keith Cartwright
FRYMIRE, EVANS, PEYTON,
TEAGUE & CARTWRIGHT
Post Office Box 695
Madisonville, KY   42431
(270) 821-6165

_J Keith Cartwright_
Attorney at Law

JKC.slt.2006RS.1011Green.Aff.Descent

STATE OF KENTUCKY >SC
COUNTY OF WEBSTER
This instrument was filed for record on the
31st day of Jan, 20 07
at 10:10 A.m. and is duly recorded in
Deed book 263
page 396
VALERIE FRANKLIN, CLERK
_____ D.C.

Exhibit H

DEED BK 263 PG 397

## AFFIDAVIT OF DESCENT FOR ROBINA PHILLIPS

Comes the Affiant, Alvin Green, who after being first duly sworn, does state as follows:

The Affiant states that he is the grandson of Robina Phillips who died intestate on May 3, 1992 a resident of Colonial Terrace Nursing Home, Sebree, Webster County, Kentucky. At the time of her death, Robina Philips was survived by the following person who is her only heir-at-law and who inherited any interest she had in any real estate in the Commonwealth of Kentucky:

| Name | Relationship | Interest Inherited |
|------|-------------|-------------------|
| Mary E. Green<br>3991 Dixon Street<br>Cincinnati, Ohio, 45229 | Daughter | Entirety |

So stated by the Affiant this 24 day of October, 2006.

_____
ALVIN GREEN

STATE OF KENTUCKY )
                  ) SCT.
COUNTY OF WEBSTER )

The foregoing Affidavit of Descent for Robina Phillips was acknowledged, sworn to, and subscribed before me by Alvin Green, a person known to me or presenting sufficient evidence of his identification, on this 24 day of October, 2006.

_____
Notary Public
My commission expires August 2, 2007

Prepared by:  J. Keith Cartwright
FRYMIRE, EVANS, PEYTON,
TEAGUE & CARTWRIGHT
Post Office Box 695
Madisonville, KY  42431
(270) 821-6165

_____
Attorney at Law

JKC.alt.2006RE.1011Phillips.Aff.Descent

STATE OF KENTUCKY >SS
COUNTY OF WEBSTER >SS
This instrument was filed for record on the
21st day of Nov, 2007
at 16:18 m and is duly recorded in
Deed book 263
page 397
VALERIE FRANKLIN, CLERK
_____ D.C.

Exhibit I

DEED BK 263  PG 398

THIS DEED OF CONVEYANCE made and entered into by and between CALVIN GREEN and his wife, CAROLYN JENA GREEN, 800 Westerfield Drive, Providence, Kentucky, 42450, hereinafter referred to as the "Grantors", and ALVIN GREEN, 800 Westerfield Drive, Providence, Kentucky, 42450, hereinafter referred to as the "Grantee";

WITNESSETH: That for and in consideration of the sum of ONE HUNDRED DOLLARS ($100.00) cash in hand paid and for the love and affection with the Grantor, Calvin Green, has for the Grantee, who is his brother, the receipt and sufficiency of which is hereby acknowledged, the Grantors do hereby grant, bargain, sell and convey unto the Grantee, his heirs and assigns forever, the following described property located in Webster County, Kentucky, more particularly bounded and described as follows:

A certain lot located in Providence, at the intersection of Westerfield Drive and South Foxwell Avenue, said lot being the Alvin and Calvin Green lot (DB 178, P 431), and described by metes and bounds as follows:

Beginning at an iron pin set on the southeast side of Westerfield Drive, 22 feet from the center, at the back of the existing sidewalk, and the northeast side of South Foxwell Avenue, said point being the point of beginning; thence with the southeast side of Westerfield Drive and the back of said sidewalk North 26° 10' 33" East, a distance of 66.28 feet to an iron pin set on the southeast side of Westerfield Drive at the back of said sidewalk, a corner to Sarah Thomas Est. (DB 105, P 259); thence with Thomas South 48° 30' 00" East, a distance of 125.23 feet to an iron pin set in the line of Noralee and Arthur Walters (no record found); thence with Walters South 36° 30' 00" West, a distance of 74.48 feet to an iron pin set on the northeast side of South Foxwell Avenue; thence with the northeast side of South Foxwell Avenue North 43° 21' 32" West, a distance of 114.66 feet to the point of beginning; said described tract containing 8,205.62 square feet, more or less, pursuant to a survey by Keith Whitledge, PLS #3399, on September 13, 2006.

Being the same property conveyed by Elmon Whitledge, Master Commissioner, et al., to Robina Phillips, Mary E. Green, Alvin Green, and Calvin Green by deed dated August 21, 1979 of record in Deed Book 178, page 431 of the Webster County Court Clerk's Office.  Robina Phillips died intestate May 3, 1992 and pursuant to the Affidavit of Descent for her of record in Deed Book 263, page 997 of the Webster County Court Clerk's Office her interest in the property passed to her daughter, Mary E. Green.  Mary E. Green died intestate April 9, 2006 and pursuant to the Affidavit of Descent for her of record in

*Exhibit J*

DEED BK 263 PG 399

Deed Book _263_, page _397_ of the Webster County Court Clerk's Office her interest in the property passed to her two sons, Alvin Green and Calvin Green.

TO HAVE AND TO HOLD the above described real property, together with all of the appurtenances thereunto belonging unto the Grantee, his heirs and assigns forever, with Covenant of General Warranty of Title.

The parties hereto state that the consideration reflected in this deed is the full consideration paid for the property. The Grantee joins in the execution of this deed for the sole purpose of certifying the consideration pursuant to KRS Chapter 382.

IN TESTIMONY WHEREOF, witness the signatures of the parties on this _28_ day of ~~October~~ November, 2006.

GRANTORS:

X _C. Alvin Green_        X _Carolyn Jena Green_
CALVIN GREEN                CAROLYN JENA GREEN

GRANTEE:

X _Alvin Green_
ALVIN GREEN

STATE OF KENTUCKY )
                 ) SCT.
COUNTY OF WEBSTER )

The foregoing Deed and Consideration Certificate was subscribed, acknowledged and sworn to before me by Calvin Green and his wife, Carolyn Jena Green, persons known to me or presenting sufficient evidence of their identification, on this _28_ day of ~~October~~ November, 2006.

_Sheryl Woolfolk_
Notary Public, State at Large, KY
My Commission Expires: _August 9, 2007_

STATE OF KENTUCKY )
                 ) SCT.
COUNTY OF WEBSTER )

The foregoing Deed and Consideration Certificate was subscribed, acknowledged and sworn to before me by Alvin Green, a person known to me or presenting sufficient evidence of his

DEED BK 263 PG 400

identification, on this ___30th___ day of ___January___, 2007.

Notary Public, State at Large, KY
My Commission Expires: ___2/1/08___

Prepared by:  J. Keith Cartwright
FRYMIRE, EVANS, PEYTON,
TEAGUE & CARTWRIGHT
Post Office Box 695
Madisonville, KY 42431
(270) 821-6165

Attorney at Law

JKC.slt.2006RB.1011Green.Deed

STATE OF KENTUCKY
COUNTY OF WEBSTER>SC
This instrument was filed for record on the
___31st___ day of ___Jan___, 20 07
at ___10:43___ m, and is duly recorded in
book ___Deed___ ___269___
page ___39 F___.
VALERIE FRANKLIN, CLERK
_____ D.C.



*Alvin & Calvin Green*
*800 Westerfield Drive*
*Providence, Ky 42450*
*8205.62 Sq. Ft.*
*DB. 178 Pg. 431*

**GRAPHIC SCALE**

0    25    50    100

**DESCRIPTION:** A certain lot located in Providence, at the intersection of Westerfield Drive and South Fossell Avenue, said lot being the Alvin and Calvin Green lot (Db.178 Pg.431), and described by metes and bounds as follows.

Beginning at an iron pin set on the southeast side of Westerfield Drive, 22 feet from the center, at the back of the existing sidewalk, and the northeast side of South Fossell Avenue, said point being the POINT OF BEGINNING; thence with the southeast side of Westerfield Drive and the back of said sidewalk N 29° 17' 33" E, a distance of 66.35 feet to an iron pin set on the southeast side of Westerfield Drive at the back of said sidewalk, a corner to Sarah Thomas Est. (Db.106 Pg.369); thence with Thomas S 45° 35' 00" E, a distance of 135.33 feet to an iron pin set in the line of Notalee and Arthur Walters (No record found); thence with Walters S 35° 35' 03" W, a distance of 74.48 feet to an iron pin set on the northeast side of South Fossell Avenue; thence with the northeast side of South Fossell Avenue N 43° 21' 32" W, a distance of 114.88 feet to the POINT OF BEGINNING; said described land containing 8,205.62 square feet, more or less, subject to any legal right-of-ways or easements. Description prepared from a physical survey performed by Keith Whitledge P.L.S. #3388 on September 13, 2006.

**STATE OF KENTUCKY**
**K.A. WHITLEDGE**
**3388**
**LICENSED PROFESSIONAL LAND SURVEYOR**

**SURVEYORS CERTIFICATION**
I hereby certify that this plat depicts a class A survey made by me, or under my direction by the means of random closed traverse, with an unadjusted error of closure of 1:21850 the bearings and distances have not been adjusted for closure. All monuments identified as set are ½" rebar 18" in length, with identification cap marked Whitledge #3388. The basis for bearings is deed record, this survey and plat meets or exceeds the minimum standards of governing requirements.

_____
KEITH WHITLEDGE          DATE   9-14-06

**OWNERS CERTIFICATION**
I do hereby certify that I am the owner of record of the property shown hereon, as recorded in DB. 178 PG. 431 in the Webster County Clerk's office, and do hereby adopt this survey.

NAME _____   DATE _____

NAME _____   DATE _____

| SURVEY PLAT THE ALVIN GREEN & CALVIN GREEN LOT 800 WESTERFIELD DRIVE PROVIDENCE, KY 42450 | |
|---|---|
| SURVEYOR: KEITH WHITLEDGE 201 ST. RT. 132 W DIXON, KY 42409 | |
| SCALE: 1" = 50' | DRAWN BY: K.A.W. |
| DATE OF SURVEY: 9-13-06 | CHECKED BY: K.A.W. |
| Plat prepared for owner: Alvin & Calvin Green 800 Westerfield Drive Providence, KY 42450 | |

DEED BK 275 PG 591

## AFFIDAVIT OF DESCENT

Comes now the Affiant, Calvin Green, and after being duly sworn state under oath as follows:

I am the brother of Alvin Green, a resident of Providence, Webster County, Kentucky, who died intestate on 11/08/2009 leaving as his sole heir at law the following:

| Name | Relationship | Age | Ownership Interest |
|------|-------------|-----|--------------------|
| Calvin Green | Brother | Over 18 | 100% |

Further the Affiant sayeth not.

_Calvin Green_
Calvin Green, Affiant

STATE OF KENTUCKY

COUNTY OF WEBSTER

The foregoing Affidavit was subscribed, sworn to and acknowledged before me by Calvin Green on this the ___7th___ day of ___June___, 2010.

_Karen Bell_
Notary Public--State at Large
My Commission Expires 3-10-13

PREPARED BY:

_____
Hon. Wm. Clint Prow
Attorney at Law
112 North Broadway
Providence, KY  42450
(270) 667-5913

Exhibit K

RECEIVED

JUL 3 0 2010

DIRECT LOSS MITIGATION
SECTION

USDA-RHS
Form RD 3550-22
(Rev. 8-93)

FORM APPROVED
OMB NO. 0575-0172

UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE

ASSUMPTION AGREEMENT
SINGLE FAMILY HOUSING

0024

| Type of Loan Assumed | | X | Section 502 |
| | | | Section 504 |
| Type of Transferee | | | Program Transferee |
| | | | Non-Program Transferee |
| Type of Assumption | | | New Rates and Terms |
| | | X | Same Rates and Terms |

Sellers Case No:
Transferee Case No:

This Agreement dated July 27, 2010 is between the United States of America, acting through the Rural Housing Service, its successors and assigns (herein called the Government) and Calvin Green

(herein called the Borrower or transferee) whose mailing address is: 800 Westerfield Drive, Providence, KY 42450

The Government is the holder of one or more of the following debt instruments executed Alvin Green
(the sellers), which instrument is secured by real property located in
Webster County, State of Kentucky pursuant to the following security instruments:

| Type of Debt Instrument | Date Executed | Original Principal | Interest Rate | Type of Security Instrument | Date Executed | Office Where Recorded | Book/Volume Document No. | Page No. |
|---|---|---|---|---|---|---|---|---|
| Prom. Note | 1/30/07 | $67,900 | 5.75 | R.E. Mortgage | 1/30/07 | Court Clk | 252 | 727 |
| Prom. Note | 8/10/07 | $19,600 | 5.75 | R.E. Mortgage | 9/13/07 | Court Clk | 269 | 249 |

In consideration of the assumption of the indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1.  The Borrower will assume the indebtedness and obligations of the above described debt and security instruments on (check only one):
☒ Same rates and terms; or
☐ New rates and terms with an interest rate of _____ percent(_____%) per annum, the principal sum of _____
($_____), with the first installment of principal and interest of $_____ dollars due on _____, and $_____ thereafter on the _____ of each month until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not paid sooner, shall be due and payable. (_____) years from the date of this Agreement. Borrower shall escrow taxes and insurance in accordance with Agency regulations. By execution of this agreement borrower becomes personally obligated to repay the principal and interest to the Government on the terms stated herein.
2.  Payments of principal and interest shall be applied in accordance with Government's accounting procedures in effect on the date of receipt of the payments. If Borrower's payment has not been received by the end of _____ days after it becomes due, Borrower will pay a late charge of _____ % of the overdue payment of principal and interest.
3.  The provision of the debt and security instruments hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower assumes the obligations of and agrees to comply with all covenants, agreements, and conditions in said instruments, as modified here, as though Borrower had executed them as of the date thereof as principal obligors. Borrower agrees to be personally liable to the Government for the repayment of the obligation assumed herein. Nothing contained herein shall be construed to release the seller from liability on the above described debt instruments.
4.  Any provision of the debt or security instruments which require that the Borrower occupy the Government financed dwelling or refinance to another credit source does not apply to assumption by a non-program transferee.
5.  This agreement is subject to present regulations of the Government and to its future regulations which are not inconsistent with the express provisions hereof:

UNITED STATES OF AMERICA
RURAL HOUSING SERVICE

By: _Dave B Russell_
Title: Area Specialist
Date: 7/27/10
Address: USDA Rural Development
         1095 National Mine Drive
         Madisonville, KY 42431

_Calvin Green_
(Borrower)

_____
(Borrower)

_____
(Cosigner)

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Exhibit L

Form RD 3550-12
(10-98)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

6 023

## SUBSIDY REPAYMENT AGREEMENT

1.    As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.    When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.    Market value at time of initial subsidy $ __87500.00__ less amount of Rural Housing Service (RHS) loans $ __88300.00__ less amount of any prior liens $ __– 0 –__ equals my/our original equity $ __– 0 –__. This amount equals __– 0 –__ % of the market value as determined by dividing original equity by the market value.

4.    If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
|---|---|---|---|---|---|---|---|---|
| 0 – 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 – 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 – 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 – 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 – 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 – 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

Average interest rate paid

6.    Calculating Recapture

Market value (at the time of transfer or abandonment)
LESS:
Prior liens,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements.
EQUALS
Appreciation value.  (If this is a positive value, continue.)
TIMES
Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

| Borrower | Date |
|---|---|
| Calvin Green | 7-27-10 |
| Borrower | Date |
| | |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

☆ U.S. GPO: 1996-528-536

EXHIBIT M

## REAMORTIZATION AGREEMENT

Account Number 

Effective Date
September  8, 2012

The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $      75681.45, plus interest on the unpaid principal of
   5.75000% per year, executed by CALVIN D GREEN                    and
_____, (Borrower) dated      April  8,  2008
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $     78198.68.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  5.75000%
per annum at $      444.23 per month beginning   October 08, 2012 and on
THE  8th DAY OF each succeeding month until the principal
AND INTEREST ARE PAID, EXCEPT THAT THE final installment of the
entire debt, if not paid sooner, will be due and payable on
   January 08, 2045.

If the outstanding loan balance prior to reamortization was reduced
by a payment which was later determined to be uncollectible, Rural
Housing Service will charge the account with an amount equal to the
uncollectible payments.  This amount is due and payable on the
effective date it is charged to the account and may accrue interest
at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

Exhibit N

563

The funds shall be held by a federal agency, including Lender, or in an institution whose deposits are insured by a federal agency, instrumentality, or entity.  Lender shall apply funds to pay the Escrow Items.  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits the Lender to make such charge.  However, Lender may require borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made.  The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency.  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.  If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_____  Date 9/21/2013
Borrower

_____  Date _____
Borrower

## REAMORTIZATION AGREEMENT

Account Number

Effective Date
September 8, 2012

The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $     19710.23, plus interest on the unpaid principal of
  5.75000% per year, executed by CALVIN D GREEN                          and
                              , (Borrower) dated      April 8,  2008
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $    21783.63.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  5.75000%
per annum at $      123.00 per month beginning   October 08, 2012 and on
THE  8th DAY OF each succeeding month until the principal
AND INTEREST ARE PAID, EXCEPT THAT THE final installment of the
entire debt, if not paid sooner, will be due and payable on
  August 08, 2045.

If the outstanding loan balance prior to reamortization was reduced
by a payment which was later determined to be uncollectible, Rural
Housing Service will charge the account with an amount equal to the
uncollectible payments.  This amount is due and payable on the
effective date it is charged to the account and may accrue interest
at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

Exhibit O

02/11/2013  15:10   2708253120                USDA RD                              PAGE  05

5b

The funds shall be held by a federal agency, including Lender, or in an
institution whose deposits are insured by a federal agency,
instrumentality, or entity.  Lender shall apply funds to pay the Escrow
Items.  Lender may not charge Borrower for holding and applying the
Funds, annually analyzing the escrow account, or verifying the Escrow
Items, unless Lender pays Borrower interest on the Funds and applicable
law permits the Lender to make such charge.  However, Lender may require
borrower to pay a one-time charge for an independent real estate tax
reporting service used by Lender in connection with this loan, unless
applicable law provides otherwise.  Unless an agreement is made or
applicable law requires interest to be paid, Lender shall not be
required to pay Borrower any interest or earnings on the funds.
Borrower and Lender may agree in writing, however, that interest shall
be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of
the funds, showing credits and debits to the funds and the purpose for
which each debit to the Funds was made.  The funds are pledged as
additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by
applicable law, Lender shall account to Borrower for the excess Funds in
accordance with the requirements of applicable law.  If the amount of
the Funds held by Lender at any time is not sufficient to pay the Escrow
Items when due, Lender may notify Borrower in writing, and, in such case
Borrower shall pay to Lender the amount necessary to make up the
deficiency.  Borrower shall make up the deficiency in no more than
twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument,
Lender shall promptly refund to Borrower any Funds held by Lender.  If
Lender shall acquire or sell the Property, Lender, prior to the
acquisition or sale of the Property, shall apply any Funds held by
Lender at the time of acquisition or sale as a credit against the sums
secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or
assumption agreement or the instruments that secure them, remain
unchanged.

Upon default in the payment of any one of the above installments or
failure to comply with any of the conditions and agreements contained in
the above-described note or assumption agreement or the instruments
securing it, the Lender, at its option may declare the entire debt
immediately due and payable and may take any other action authorized to
remedy the default.

_____  Date 9/21/2013
Borrower

_____  Date _____
Borrower



**Send Beautiful Flowers**

**Share a Memory**

**Share**

# Calvin Denton Green

October 27, 1939 - January 22, 2018

Login

PRINT

The family of Calvin Denton Green created this Life Tributes page to make it easy to share your memories.

| Obituary & Service | Share a Memory Below | Flowers & Gifts |
|---|---|---|
| Calvin Denton Green, 78, went home to be with the... | A comforting word from you means a lot. | Send flowers to the Green's family. |
| **View More** | **Share a Memory** | **Send Flowers** |

| Tribute Wall | Photos & Videos | Obituary & Service | + More |
|---|---|---|---|

## Obituary for Calvin Denton Green

Calvin Denton Green, 78, went home to be with the Lord on January 22, 2018 at Baptist Health Hospital in Madisonville, KY. He and his twin brother, Alvin, who preceded him in death, were born on October 27, 1939 to the late Robert Green and Mary Rucker Green in Providence, Ky.

Calvin was educated in the Providence School System and graduated from High School there. He was a long-time member of Pleasant Hill Baptist Church. Calvin retired from Speed Queen Manufacturing after many years of service.

Calvin was an avid sports fan especially UK basketball. He loved watching ball games on television and socializing with his friends. He also enjoyed listening to the Blues.

Calvin leaves behind to cherish his memory, his uncle: Calbert Brooks (Revella); very special aunt: Frances Bass; special cousin who cared for him: Sherry Martin; special friend: Pam Hampton; and a host of cousins and friends.

To send flowers or a memorial gift to the family of Calvin Denton Green please visit our Sympathy Store.

## Previous Events

### Visitation

JAN **27.** 11:00 AM - 1:00 PM (CST)

Pleasant Hill Baptist Church
821 Westerfield Drive
Providence, KY



Providence

© Stadia Maps, © OpenMapTiles © OpenStreetMap,

Get Driving Directions

*Exhibit P*

9/27/2019

Case 4:19-cv-00138-JHM-HBB  Document 1-17  Filed 10/10/19  Page 2 of 3 PageID #: 54

**Service**

JAN **27.** 1:00 PM (CST)

Pleasant Hill Baptist Church
821 Westerfield Drive
Providence, KY



Providence

© Stadia Maps, © OpenMapTiles © OpenStreetMap,

Get Driving Directions

# Contact Us

## Locations

## Email

## Daily Email Affirmations

**Mason & Sons Funeral Home**

409 E. Noel Ave.
Madisonville, KY
42431
(270) 821-3906
https://www.masonbr
othersfuneralservices.
com

**R. Mason Brothers Memorial Chapel, LLC**

1001 Lincoln Ave.
Evansville, IN 47714
(812) 421-8692
https://www.masonbr
othersfuneralservices.
com

**R. Mason Brothers Memorial Chapel, LLC**

masons@mw.twcbc.c
om

**Name**

**Email**

SIGN UP

9/27/2019

**Mason Brothers**
**Audubon Chapel**

1322 Helm St.
Henderson, KY 42420
(812) 421-8692
https://www.masonbr
othersfuneralservices.
com

Civil Action No. 06-C-00056                                    Webster District Court

Trover Clinic Foundation Inc. et al                            PLAINTIFF,

VS.                          **NOTICE OF JUDGMENT LIEN**

Calvin Denton Green, ***-**-4141
Carolyn Green, ***-**-6248                                     DEFENDANTS.

Take notice that the above referenced Plaintiff obtained a Judgment against the above referenced
Defendants in the above Court, for the sum of $1320.32, with interest accruing at the rate of 12% per
annum from May 27, 2008, plus all court costs expended, and as security for said Judgment levies on all
of the right, title and interest of the Defendants, Calvin Denton Green and Carolyn Green, in and to any
real property located in Webster County, Kentucky.

**NOTICE**

**NOTICE TO JUDGMENT DEBTORS** You may be entitled to an exemption under
K.R.S. 427.060, reprinted below.  If you believe you are entitled to assert an exemption seek
legal advice.

In addition to any exemption of personal property, an individual debtor's aggregate
interest, not to exceed $5,000.00 in value, in real or personal property that such debtor or a
dependent of such debtor uses as a permanent residence in this state, or in a burial plot for
such debtor or a dependent of such debtor is exempt from sale under execution, attachment
or judgment, except to foreclose a mortgage given by the owner of a homestead or for
purchase money due thereon.  This exemption shall not apply if the debt or liability existed
prior to the purchase of the property or the erection of the improvements thereon.

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was mailed on September 24, 2010 to Calvin
Denton Green and Carolyn Green, 1305 Kenilwood Way Apt B, Bowling Green KY 42104 in compliance
with KRS 426.720(3).

ATTORNEY FOR PLAINTIFF:                    PREPARED BY:

Leif C. Ratliff                            Leif C. Ratliff
Logan, Morton & Ratliff                    Logan, Morton & Ratliff
P.O. Box 429                               P.O. Box 429
Madisonville, KY 42431                     Madisonville, KY 42431
(270) 821-1445                             (270) 821-1445

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO
COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR
THAT PURPOSE.**

*Exhibit Q*